UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHOICE L. CAUSEY,

Plaintiff,

v.

ARTHUR DORE,

Defendant.

_____/

Case No. 19-cv-10503

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [#39], DENYING PLAINTIFF'S MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT [#50], AND FINDING
DEFENDANT'S MOTION FOR LEAVE TO FILE NOTICE OF NON-
PARTY FAULT MOOT [#49]**

**I. INTRODUCTION**

On February 19, 2019, Plaintiff Choice Causey ("Causey") commenced this

action against Defendant Arthur Dore ("Dore") concerning a terminated lease

agreement for the Prime Event Center in Bay City, Michigan. ECF No. 1. Plaintiff

filed his First Amended Complaint on November 1, 2019, alleging state law claims

for false light invasion of privacy and tortious interference with a business

relationship. ECF No. 28.

Presently before the Court is Defendant's Motion for Summary Judgement,

filed on January 15, 2020. ECF No. 39. Defendant also filed a Motion for Leave to

File Notice of Non-Party Fault, ECF No. 49, and Plaintiff filed a Motion for Leave

to File Amended Complaint, ECF No. 50.  All of the motions are fully briefed.  A hearing on these matters was held on August 24, 2020.  For the reasons that follow, the Court will **GRANT** Defendant's Motion for Summary Judgment [#39], **DENY** Plaintiff's Motion for Leave to File Amended Complaint [#50], and find that Defendant's Motion for Leave to File Notice of Non-Party Fault is **MOOT** [#49].

## II. Background

### A. The Prime Event Center Lease Agreement

Plaintiff Choice Causey entered into a lease agreement for the Prime Event Center building with non-party Dore Real Estate, LLC ("Dore Real Estate") in March 2016.  ECF No. 39, PageID.243; ECF No. 45, PageID.580.  Defendant Arthur Dore was not a party to the lease agreement.  Defendant avers that he "is not a member, manager, or employee of Dore Real Estate, LLC, but has served as a consultant to Dore Real Estate, LLC in an unpaid capacity."  ECF No. 39, PageID.243-244.  Instead, Defendant "has offered advice to representatives" of Dore Real Estate and "performs certain tasks" on behalf of the company.  *Id.* at PageID.244.

The agreement provided for an initial six-month lease term and included an option to extend the lease term or purchase the building for $300,000.  ECF No. 45-2, PageID.607, 621.  Under the terms of the lease, Plaintiff agreed to pay $5,000 per

month to Dore Real Estate for the duration of the lease.  ECF No. 45-2, PageID.607.

Two additional provisions of the lease agreement are relevant to the instant matter:

> 2.11 <u>Early Termination</u>. Notwithstanding anything to the contrary contained herein, at any time of the Lease Term, Landlord shall have the right to terminate this Lease upon written notice to Tenant for any reason in Landlord's sole discretion.  In the event of such early termination, Landlord shall have no further liability to Tenant under this lease.
>
> …
>
> 15.01 <u>Right to Re-enter</u>. In the event of (i) any failure of Tenant to pay any rent due hereunder as and when it is due and the further failure of Tenant to cure the same within ten (10) days following Tenant's receipt of written notice of nonpayment and demand for payment . . . any such happening shall be a default by Tenant, and Landlord . . . shall have the immediate right . . . of re-entry and may remove all persons and property from the Premises;
>
> ECF No. 45-2, PageID.607, 617.

Plaintiff held his first event, a music concert, at the Prime Event Center on March 5, 2016.  ECF No. 45, PageID.582.  Not long after, the Bay City Police Department received a complaint from a local business owner, John Roszatycki ("Roszatycki"), who owned the bowling alley next to the Prime Event Center.  ECF No. 30, PageID.758.  Roszatycki told the Bay City Police Department, including Officer Thomas Pletzke ("Pletzke"), that there was a violent fight outside of the Prime Event Center and that the fight was purportedly gang related.  *Id.* at PageID.759.  The Bay City Police Department conducted an investigation "and discovered on social media that two rival gangs were promoting a future event that Mr. Causey was planning."  ECF No. 39, PageID.243.

On March 11, 2016, Defendant called Plaintiff on his cell phone and left the following voicemail message:

> *Hey Choice, this is Art Dore. As we said in the contract, any time I'm not happy the deal was going to be off. So now the deal is off. The police department, the city manager, everybody is on my ass. They're saying that some gangs from Saginaw are promoting the event starting tomorrow and they're scared shitless that something's going to happen. And so I don't want any part of it. So the deal is off. The deal will not go on. The party cannot go on tomorrow night. Call me back, please.*

ECF No. 39, PageID.244; ECF No. 45, PageID.582-583.

Plaintiff alleges that he "understood the above-quoted recording to be terminating the lease agreement," ECF No. 45, PageID.583, but Dore subsequently informed Causey that he could continue to host events at the Prime Event Center if Plaintiff could receive approval from the Bay City Police Department first, ECF No. 39, PageID.244. Plaintiff proceeded to host at least one event after he received the voicemail, and Causey "opened the doors, opened the venue, staffed it and operated it." ECF No. 39, PageID.244. Plaintiff asserts, however, that he was forced to incur losses from canceling eight separate events afterwards. ECF No. 45, PageID.583.

Plaintiff attended meetings with both the Bay City Police Department, the Defendant, and other representatives of Dore Real Estate later in March 2016. ECF No. 39, PageID.244-245; ECF No. 45, PageID.583-584. Plaintiff alleges that Defendant insinuated that certain types of events, including those with "black acts," would not be permitted moving forward. ECF No. 45, PageID.584.

Following the March meeting with the Dore Real Estate representatives, Plaintiff paid the lease requirements in accordance with the lease agreement, which states that "[f]irst and last month rent shall be paid at signing of this Agreement." ECF No. 45-2, PageID.608; ECF No. 45, PageID.585. Plaintiff explains that he "understood 'last month rent' to mean the last month he operated the Prime Event Center under the lease." ECF No. 45, PageID.585.

Defendant then asserts that Causey failed to make the required rent payment that was due on April 1, 2016. ECF No. 39, PageID.245. As a result, Dore Real Estate purportedly sent Causey (1) a letter notifying Plaintiff that he was in default of the rent on April 14, 2016, and then (2) a notice of termination of the lease for failure to pay the April rent. ECF No. 39, PageID.245. Dore Real Estate thereafter took possession of the property. *Id.* Plaintiff contends that he never received either letter from Dore Real Estate regarding his default on the rent payment. ECF No. 45, PageID.586. He further argues that he already paid the rent for April when he paid "last month rent" at the signing of the lease agreement. *Id.*

## B. The MLive Article

On July 25, 2016, Plaintiff filed suit against the City of Bay City, the City's Manager, and two Bay City police officers, alleging violations of his civil rights in the termination of the lease agreement. On August 16, 2016, an article was published in MLive that reflected a conversation Defendant allegedly had with a reporter,

Andrew Dodson, concerning Plaintiff's lawsuit.  *See* Andrew Dodson, *Former event center manager files race discrimination lawsuit against city*, MLive (Aug. 16, 2016),   https://www.mlive.com/news/bay-city/2016/08/ex-event_center_manager_files.html.  The instant dispute stems from the following language published in the article:

> Sometime between March and July, Dore notified Causey that his contract to run the Prime was being terminated. According to the lawsuit complaint, Dore told Causey that Bay City's manager and its police department were "on his ass" to terminate his contract because they believed he was having gangs promote upcoming events.
>
> Dore said Monday, Aug. 15, that Bay City police officials approached him with concerns about Causey, *but that his contract was terminated because Causey wasn't paying his rent.*
>
> *"The fact is, he didn't live up to his contract," Dore said. "He didn't pay, that's it. I don't know anything about all of that other stuff."*

*Id.* (emphasis added).  Dodson, the reporter and author of the article, testified in a deposition that he interviewed Defendant for the article and relayed what Defendant said in the relevant quoted language.  *See* ECF No. 45-10, PageID.756.

### C. Procedural Background

As discussed *supra*, on July 25, 2016, Plaintiff filed suit against the City of Bay City, the City's Manager, and two Bay City police officers, alleging violations of his civil rights in the termination of the lease agreement.  This Court initially granted in part and denied in part Defendants' summary judgment motion.  Upon a review of Defendants' reconsideration motion, this Court then granted Defendants'

summary judgment motion in full.  The case was subsequently dismissed without prejudice.  *See Causey v. City of Bay City, et al.*, No. 2:16-cv-12747 (E.D. Mich. Feb. 6, 2018).

Plaintiff thereafter filed suit against just one of the Defendant officers, Pletzke, alleging similar damages from the termination of the relevant lease agreement.  *See Causey v. City of Bay City, et al.*, No. 1:18-cv-10626 (E.D. Mich. Feb. 6, 2018).  The suit was eventually settled; Plaintiff agreed to release all claims against the City of Bay City and its employees in exchange for a confidential sum. ECF No. 39-11, PageID.432.

On February 19, 2019, Plaintiff filed the instant action against Defendant Dore alleging one count of false light invasion of privacy, which related to Defendant's quoted language in the MLive article.  *See* ECF No. 1.  Plaintiff subsequently amended his complaint on November 1, 2019 and added an additional claim for tortious interference with a business relationship.  *See* ECF No. 28, PageID.128.

Defendant now moves for summary judgment on both of Plaintiff's claims, arguing that the false light claim fails as a matter of law and the tortious interference claim is barred by the applicable statute of limitations. Defendant also filed A Motion for Leave to File Notice of Non-Party Fault, seeking to name the City of Bay City and Thomas Pletzke as responsible parties for Plaintiff's damages.  Defendant notes that the non-party fault motion would be rendered moot if this Court granted

his summary judgment motion.  Additionally, Plaintiff filed his Motion to Amend the First Amended Complaint, seeking to add two counts of race discrimination and conspiracy in violation of the Michigan Elliot-Larsen Civil Rights Act.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998).  The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

#### A. False Light—Invasion of Privacy (Count I)

Under Michigan state law, an invasion of privacy claim may protect against four types of privacy invasions: "(1) intrusion upon the plaintiff's seclusion or

solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Puetz v. Spectrum Health Hosps.*, 324 Mich. App. 51, 69, 919 N.W.2d 439 (2018) (quoting *Doe v. Mills*, 212 Mich. App. 73, 80, 536 N.W.2d 824 (1995)). As in *Puetz*, Plaintiff's first claim in this case is brought under the third type: false light invasion of privacy. *Id.*

The Sixth Circuit has established that "[a] false light invasion of privacy under Michigan law involves (1) the public broadcast (2) of false information (3) that would be highly objectionable to a reasonable person." *Fronning v. Jones*, 77 F.3d 482 (6th Cir. 1996) (citing *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 631– 32, 504 N.W.2d 715, 720–21 (1993)). Additionally, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Peffer v. Thompson*, 754 F. App'x 316, 320 (6th Cir. 2018) (quoting *Detroit Free Press, Inc., v. Oakland Cty. Sheriff*, 164 Mich.App. 656, 418 N.W.2d 124, 128 (1987)).

Here, Plaintiff asserts that three of Defendant's statements made in the MLive article establish the basis for his false light claim:

> (1) Dore said Monday, Aug. 15, that Bay City police officials approached him with concerns about Causey, *but that his contract was terminated because Causey wasn't paying his rent.*

9

(2) *"The fact is, he didn't live up to his contract," Dore said.*

(3) *"He didn't pay, that's it."*

Andrew Dodson, *Former event center manager files race discrimination lawsuit against city*, MLive (Aug. 16, 2016), https://www.mlive.com/news/bay-city/2016/08/ex-event_center_manager_ files.html.

As to the first prong of the invasion of privacy analysis, Defendant concedes that the article was published on MLive and therefore was publicly broadcasted. ECF No. 39, PageID.249. Thus, the first requirement has been met.

For the false information prong, Plaintiff first argues that he was not obligated to pay rent for April because Defendant's voicemail constituted a termination of the entire lease. ECF No. 45, PageID.592. However, Causey does not dispute the fact that he continued to operate the Prime Event Center after the voicemail and during the month of April, contradicting his termination claim. Instead, Plaintiff's second argument is that he understood the phrase "last month rent" in the lease agreement to mean the last month he operated the Prime Event Center. *Id.* at PageID.585. Under this interpretation, Causey argues, he had already paid for April rent and was never in default, so Defendant's statements to MLive were false.

The Court is not persuaded by either of Plaintiff's arguments here. The contract was signed with a six-month term, commencing in March 2016 and ending in August 2016. The plain and common interpretation of the lease agreement would

render March to be the "first month" and August as the "last month," with the option to extend the lease term.  The first page of the lease agreement contains this language explicitly, stating:

> "[t]he term of this lease . . . shall be for a period commencing on the date Landlord delivers possession of the Premises . . . and *ending on the last day of the month in which the Sixth (6th) month anniversary of the Commencement Date occurs*, unless sooner terminated as set forth in this Lease . . . ."

ECF No. 45-2, PageID.607 (emphasis supplied).  The Court sees no reason to contradict the plain interpretation and terms of the lease agreement, and finds that Plaintiff's $10,000 initial payment in March did not foreclose his obligation to pay April's rent.  Additionally, the evidence does not support Plaintiff's argument that Dore's voicemail was a termination of the lease agreement, so the early termination language in the above excerpt is not applicable.  Accordingly, Causey has not demonstrated that the MLive article contained any false information and therefore cannot maintain his false light claim.

Finally, even if Plaintiff had been able to prove the second prong, his arguments are insufficient to show that Dore's statements were "highly objectionable to a reasonable person."  *Fronning*, 77 F.3d at 482.  Each of the statements are brief, devoid of any detail, and relate only to the termination of the contract for Causey's failure to pay April rent.  Further, "the information revealed was not private" and did not "attribut[e] to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position."  *Duran v. Detroit*

*News, Inc.*, 200 Mich. App. 622, 631-632, 504 N.W.2d 715, 720-721 (1993).  Thus, Plaintiff has also failed to meet the third prong of his false light claim.

In sum, Plaintiff does not meet the requirements to establish a genuine dispute of material fact regarding his false light invasion of privacy claim against Dore. Accordingly, Defendant is entitled to summary judgment as to Count I.

## B. Tortious Interference with a Business Relationship (Count II)

Defendant alleges that he is entitled to summary judgment on Plaintiff's second claim because it is barred by the applicable statute of limitations.  Under Michigan law, "the statute of limitations for a claim of tortious interference is three years."  *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 673 N.W. 2d 805, 813 (Mich. Ct. App. 2003).

Here, the lease agreement between Plaintiff and Dore Real Estate was terminated on April 25, 2016.  ECF No. 39, PageID.255.  Defendant asserts that therefore, "any alleged inference by Defendant that resulted in that termination must have occurred, at the latest, on April 26, 2016," so Plaintiff had until April 25, 2019 to file within the limitations period.  *Id.*  Plaintiff did not assert this second claim, however, until November 1, 2019, in his First Amended Complaint.  *See* ECF No. 28.

Conceding that the statute of limitations period for his claim has expired, Plaintiff instead argues that, under Federal Rule of Civil Procedure 15, his claim

relates back to his original complaint.  ECF No. 45, PageID.598.  Rule 15 states in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15(c)(1).  The Sixth Circuit has established that a claim arises from the same "conduct, transaction, or occurrence" if "there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong." *Durand v. Hanover Ins. Group, Inc.*, 806 F.3d 387, 374–75 (6th Cir. 2015) (quoting *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000)).

Here, it is clear that Plaintiff's claim for tortious interference with a business relationship does not arise from the same conduct, transaction, or occurrence as pleaded in his original Complaint.  The first count, false light invasion of privacy, is related to Defendant's statements made in a media publication.  This additional count of tortious interference, however, relates to the lease agreement itself and the termination thereof.  While the overarching subject matter of Plaintiff's second count broadly concerns the same incident, the circumstances and details of the contract's termination do not sufficiently relate back to media statements made months after the fact and cannot be said to fall under the same "general conduct causing such

13

wrong." *Durand*, 806 F.3d at 374–75.   Accordingly, Defendant is also entitled to summary judgment on Count II.

## IV. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Additionally, Plaintiff seeks to amend his First Amended Complaint. *See* ECF No. 50.  Plaintiff first filed the instant matter on February 19, 2020. *See* ECF No. 1.  This Court's Scheduling Order set May 30, 2019 as the deadline to amend the pleadings.  *See* ECF No. 13, PageID.37.  Pursuant to stipulation of the parties, however, Plaintiff was permitted to amend his Complaint after this deadline because the parties filed a Joint Motion to Extend Deadlines and Allow Plaintiff to File Amended Complaint.  ECF No. 27.  Causey subsequently filed his First Amended Complaint on November 1, 2019 and added one count for tortious interference with a business relationship.  ECF No. 28.

On February 26, 2020, Plaintiff filed the present motion seeking to add two counts of race discrimination and conspiracy in violation of the Michigan Elliot-Larsen Civil Rights Act.  For the reasons stated below, the Court will deny Plaintiff's Motion.

### A. Standard of Review

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend a pleading before trial as a matter of course, with the opposing party's written consent, or by leave of the Court.  *See* Fed. R. Civ. P. 15(a)(1)-(2).  Rule 15 clarifies

that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Sixth Circuit has found that "[t]he decision as to when 'justice requires' an amendment is within the discretion of the trial judge." *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (citation and alteration omitted).

Nevertheless, "[a]lthough Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend a complaint when justice so requires, the right to amend is not absolute or automatic." *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) (internal quotation and modification omitted). The Sixth Circuit has guided that "[i]n deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir.2001); *see Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016). "Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Head*, 870 F.2d at 1123).

## B. Discussion

Plaintiff states that after reviewing "all of the relevant depositions" in this and related matters, Plaintiff's "[c]ounsel admittedly then discovered and/or recalled the true extent of Defendant Dore's interference with Plaintiff's lease agreement."  ECF No. 50, PageID.829.  This discovery precipitated the allegation that "Dore had inserted illegal conditions precedent into the lease agreement," including a general prohibition on most "black acts" at the Prime Event Center.  *Id.*  Plaintiff argues that, while this requested amendment is untimely, good cause exists because Dore clarified that he was not a party to the lease agreement in his October 2019 deposition, and this revelation formed the basis for the new claims.  ECF No. 55, PageID.906.

Dore argues that Plaintiff's Motion should be denied because the Motion was unduly delayed and would result in undue prejudice.  Specifically, Defendant states that Causey did not exercise diligence because he "knew of the basis for these new claims long before the expiration of the amendment deadline, long before the close of discovery," and presumably prior to the filing of the instant case because of the numerous previous lawsuits.   ECF No. 54, PageID.888-889.  Defendant points out that Plaintiff relies on his 2017 deposition in responding to the summary judgment motion and asserts that it is therefore "beyond dispute that Plaintiff was aware of the facts underlying these claims since at least May 10, 2017."  *Id.* at PageID.889.

This Court agrees with Defendant and finds that Causey has not met his burden to justify his delay in filing the present Motion, and that Dore would suffer prejudice if the relief was granted.  The Sixth Circuit has made clear that "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."  *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (citation omitted).  Here, Dore had already filed his Motion for Summary Judgment when this instant Motion was filed, and yet Causey is seeking to amend his Complaint due to information "(re)discovered" during discovery.  ECF No. 50, PageID.829.

The Court is not persuaded that "(re)discovering" or "recalling" additional claims against Defendant is sufficient good cause, especially after Causey already amended his complaint in November 2019 and nine months have passed since the pleading amendment deadline.  *See id.*  Plaintiff has not provided any evidence discovered after October 2019—the date of Dore's deposition where Plaintiff alleges his answers were inconsistent—that would explain why Causey waited until February 2020 to file the instant Motion.  Instead, this timeline indicates that Plaintiff "fail[ed] to cure deficiencies by previous amendments," because his First Amended Complaint was filed in November 2019, after Dore's deposition in question.  *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d at 605.

Additionally, it is well established "that allowing amendment after the close of discovery creates significant prejudice[.]" *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citing *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15 (1st Cir. 1979); *Campbell v. Emory Clinic*, 166 F.3d 1157 (11th Cir. 1999); *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 157 F.3d 956 (2d Cir. 1998); *Ferguson v. Roberts*, 11 F.3d 696 (7th Cir. 1993); *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196 (3rd Cir. 1989)).

Notably, the Sixth Circuit in *Duggins* affirmed the district court's denial of leave to amend the complaint noting that "the district court named both undue delay in missing deadlines and undue prejudice to the opponent in allowing amendment after the close of discovery in coming to its decision." 195 F.3d at 834. The Sixth Circuit noted that the plaintiff in that case was "obviously aware of the basis of the claim for many months, . . . [yet] delayed pursuing [the] claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed." *Id.*

Here, Causey similarly does not dispute that he pursued these additional claims until long after discovery closed, the dispositive motion deadline passed, and Dore filed his motion for summary judgment. As such, the situation analyzed in *Duggins* is notably similar to the facts presently before the Court. On such facts, the

court in *Duggins* explicitly found that "[t]he district court did not abuse its discretion in denying leave to amend the complaint at such a late stage of the litigation." *Id.*

Thus, the Court finds that Plaintiff's undue delay and the potential prejudice to Dore are significant factors that indicate Causey has not demonstrated good cause to file an amended complaint at this stage of the litigation. Accordingly, the Court will deny Plaintiff's Motion for Leave to File Amended Complaint.

### V. CONCLUSION

For the reasons discussed herein, the Court will **GRANT** Defendant's Motion for Summary Judgment [#39] and **DENY** Plaintiff's Motion for Leave to File Amended Complaint [#50]. Further, because the Court has granted Defendant's summary judgment motion in its entirety, Defendant's Motion for Leave to File Notice of Non-Party Fault is therefore **MOOT** [#49].

**IT IS SO ORDERED.**

s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  September 22, 2020

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
September 22, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

19